IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| BRUCE EDWARD EMBREY ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. TMD 10-2680M |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Bruce Edward Embrey ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under Title II and of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 10) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 17). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff filed his application for DIB on January 30, 2007 alleging disability since November 27, 2006 on the basis of sleep apnea, asthma, morbid obesity, high blood pressure and arthritis. R. at 11, 90, 94. His claim was denied initially, R. at 38, 40-42, but he was found to

be disabled on reconsideration effective December 1, 2007.[1]  R. at 39, 51-52.  Plaintiff requested a hearing alleging an onset date of November 26, 2006.  R. at 53.  A hearing was held by video conference on October 3, 2008 at which Plaintiff testified.  Plaintiff was represented by counsel at the hearing.  R. at 19-37.  On November 5, 2008, the administrative law judge ("ALJ") issued a decision denying Plaintiff's claim for benefits.  R. at 11-18.  The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review.  R. at 1-3.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20 C.F.R. § 404.1520.  At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since his alleged onset date.  At step two, the ALJ determined that Claimant suffered from the following severe impairments: obesity, sleep apnea, asthma and arthritis.  At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1.  The ALJ concluded at step four that, given his Residual Functional Capacity ("RFC") Plaintiff was capable of performing his past relevant work.  Accordingly, he concluded that Claimant was not disabled as of November 27, 2006 through the date of the decision.  R. at 11-18.  He rejected the prior determination that Claimant was disabled as of December 6, 2007 because "subsequent treatment records reflect response to treatment and that the claimant's daily activities had increased since prior to

---

[1] The ALJ indicated an onset date of December 6, 2007.  R. at 11.

December 2007." R. at 16.

### III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

### IV. Discussion

Plaintiff argues that the ALJ (1) failed to properly compare the medical evidence to the Listing of Impairments; (2) erred in finding that Claimant retained the RFC to perform his past relevant work; (3) failed to properly weight the opinions of his treating physicians; and (4) failed to properly assess his complaints of pain.

A.   LOI

Plaintiff argues that the ALJ erred in finding that his impairments did not meet or medically equal Sections 1.02A, 1.04, 3.02, and 3.03B.  The ALJ discussed each of these Listings, finding that the severity requirements under each were not met.  The Court agrees.

In addressing Listings 1.04 and 1.02A, the ALJ found that Claimant's "musculoskeletal impairments have not resulted in a compromise of a nerve root or the spinal cord, motor loss, spinal arachnoiditis, lumbar spinal stenosis, or an inability to ambulate . . . "  Listing 1.02A— major dysfunction of a joint—has four requirements. First, the claimant must have a "gross anatomical deformity.  Second, the claimant must have chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint.   Third, there must be findings on acceptable medical imaging of, among other things, joint space narrowing. Finally, the affected joint must be a weight-bearing joint, such as a hip, knee, or ankle, resulting in the inability to ambulate effectively.  *Id.*  Simply stated, Plaintiff has not met all of the criteria.

An ability to ambulate effectively is defined as the ability to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  Listing 1.00 B2b(2)(2010). Examples of ineffective ambulation include the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carryout routine ambulatory activities such as shopping and banking and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id*.  The evidence in the record clearly demonstrates that Claimant did not meet his burden in proving

4

he suffered from an inability to ambulate effectively as found by the ALJ.  First, he testified that he did not have knee surgery, never had injections and never went to the emergency room for pain in his knees.  He testified that although once prescribed pain medication for his knees, he only took over the counter medication and rated his pain as either a 5 or 6 out of scale of 10.  R. at 28-29.  He further testified that although he uses a cane, it was not prescribed by a health care provider nor was any other assistive device.  *Id*. He testified in October 2008 that he could walk 15 minutes or so before needing a break.  R. at 29.    In 2006, he reported walking 30 to 40 minutes 2 to 3 times per week.  R. at 199.

In support of his argument that his chronic knee pain meets this Listing, Plaintiff directs the Court's attention to various medical evidence in the record including evidence of his arthritis, complaints of pain and degenerative changes.  Nevertheless, Claimant must demonstrate that he meets all of the requirements under the Listing and he has not done so here. *See Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (noting that all requirements under the Listing must be met).

Next Plaintiff argues he meets Listing 1.04.  Listing 1.04 involves disorders of the spine and requires evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Claimant does not point to any evidence that supports that he had nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, such that he met or equaled the criteria of this listing. The ALJ's conclusion that Claimant did not meet this listing therefore satisfies our scrutiny.

Plaintiff next argues that the ALJ erred at step 3 by finding that his condition did not

meet Listing 3.02A. Under that listing, if a person suffering from chronic obstructive pulmonary disease ("COPD") has a forced expiratory volume in one second (FEV1) at a particular value, he automatically qualifies for benefits. Listing § 3.02 (A).  FEV1 is measured through use of an instrument called a "spirograph" both before and after the patient inhales a "bronchodilator" medication. *See* § 3.00(E). Both measurements produce FEV1 values, but only the highest post-bronchodilator result is used to assess the severity of the respiratory impairment. *See id.* For a person of Claimant's height, an FEV1 value at or below 1.65 qualifies for benefits. *See* § 3.02 (A) tbl.1. Claimant does not point to any spirograph reading which satisfies the criteria.  The evidence actually demonstrates that Claimant had a FEV1 of 3.64 (R. at 228), FEV1 of 2.89 (R. at 270-75) and "normal" in December, 2007.  R. at 298.

Claimant also argues that he meets Listing 3.03 for asthma.  To meet this Listing, Plaintiff must prove that he suffers from chronic asthmatic bronchitis with the FEV1 equal to or less than the value specified in the 3.02A table (which, as discussed above, he does not) or suffer from asthma  attacks occurring at least once every two months or at least six times per year.  The ALJ found that Claimant did not suffer from asthma attacks, despite treatment, with the frequency required to meet section 3.03B.  While Claimant did have an asthma diagnosis, an "impairment(s) cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. § 404.1525(d).  Finally, the definition of  "attacks" referenced above, is as follows:

> prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.

20 C.F.R. § 3.00C.  Clearly, Plaintiff does not meet the listing.  He reported to Dr. Bowen that he had never gone to the emergency room and had no exercise limitations.  R. at 228.  Claimant's asthma was repeatedly reported as stable, R. at 219, 224, 225, 227, 346, 347 and that he was breathing "good" or "well" and his lungs were clear.  R. at 219, 224, 225, 227, 248.  Examination in September, 2007 revealed no wheezes, rales or rhonci but findings of decreased air movement. R. at 256.  It was also reported that Claimant was not short of breath on mild exertion or in the supine position.  R. at 258.  The multiple asthma attacks required under the Listing are simply not present.[2]

      B.      <u>RFC and Past Relevant Work</u>

Plaintiff next argues that the ALJ erred in finding that he retained the RFC to perform his past relevant work as a Jr. Linux Administrator.  He argues that the ALJ improperly discredited his assertion that he had a propensity to fall asleep during work.  Claimant specifically testified at the hearing that he cannot work because of his sleep apnea that causes him to fall asleep at work as well as driving to work.  R. at 14, 35.  While the ALJ credited Claimant's diagnosis of sleep apnea, he nonetheless determined that Claimant was not fully credible.[3]  He noted that there was no evidence to support his testimony regarding side effects of the medication or problems with his concentration.  The ALJ also noted that Claimant did not report disabling medication side effects

---

[2] Plaintiff also argues in connection with his LOI argument that the ALJ did not consider the combination of his impairments.  A review of the ALJ's decision indeed shows that he considered the combination of impairments; and therefore that argument is rejected.

[3] In a related argument, Plaintiff complains that the ALJ improperly evaluated his subjective complaints of pain. For the reasons discussed above, the Court also rejects that argument.

and significantly, mental status examinations revealed that he was "alert, his intellectual function was normal and his memory was good." R. at 15, 99-100, 148 (listing side effects of medication), 244 (Claimant reported as alert), 256 (intellectual functioning appears normal, understands conversational voices without difficulty, recent and remote memory for medical events is good).

The ALJ also properly relied on Claimant's extensive activities of daily living in discrediting his claims of pain and assertions that he fell asleep during work. He lives independently, takes care of his own personal needs including cooking, laundry, cleaning, yard work and shopping. The ALJ specifically noted that with respect to his assertions of nodding off and memory and concentration problems, uses public transportation, visits historical sites, goes out to dinner, works on computers, manages his own finances, can pay attention and follow instructions and needs no reminders or encouragement to do things.[4] R. at 16, 122-28, 164-70. Claimant testified he gets between 7 and 8 hours of sleep per night and does aerobics twice per week. R. at 29, 31. It is not for the Court to substitute its judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (in reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary.); *see also Myers v. Apfel*, 2011 WL 5560683 9(4th Cir. Nov. 16, 2011) (holding ALJ did not err in finding Claimant's complaints of daytime drowsiness not fully credible).

Plaintiff further argues that the ALJ erred by not utilizing a vocational expert ("VE") to determine if there were significant jobs in the national and local economies Claimant could

---

[4] The ALJ incorrectly indicated that Claimant is able to drive 100 miles without difficulty. R. at 123. Nevertheless, the remaining evidence cited by the ALJ is substantial and supports the ALJ's credibility determination and

8

perform. The ALJ found Claimant capable of performing his past relevant work; and therefore a VE was not required. *See Smith v. Bowen*, 837 F.2d 635, 637 (4th Cir. 1987) ("A vocational expert enters the sequential analysis for determining disability *after* a claimant is found unable to do her past relevant work.") *citing* 20 C.F.R. § 404.1566(e) (emphasis added). Plaintiff's past relevant work was performed at a level compatible with his RFC. The ALJ found Claimant had no limitations in his ability to sit, that he could stand and walk up to two hours overall in an eight hour workday and lift and carry up to 10 pounds frequently and 40 pounds occasionally, He found he could not climb ladders, ropes or scaffolds, only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and needs to avoid concentrated exposure to temperature extremes and to avoid unprotected heights and dangerous machinery. R. at 14. In assessing whether Claimant was capable of performing his past work as he actually performed it, he noted that Claimant himself testified that it was only due to his nodding off that he was incapable of continuing his work. Given the discussion above, that substantial evidence supports the ALJ's credibility determination with respect to Claimant's assertions of nodding off, the Court finds that the ALJ did not err in his finding that he can perform his past relevant work.[5] The ALJ also found that despite Claimant's assertion that his job required him to lift

---

therefore the incorrect citation is harmless.

[5] While Claimant also indicated his arthritis interfered with his ability to perform his past work, the Court finds that, based on the discussion above, the ALJ's finding is still supported by substantial evidence. *See supra* p. 4-5 (Claimant did not have knee surgery, never had injections and never went to the emergency room for pain in his knees, etc).

9

50 pounds or more frequently,[6] R. at 137, he reported that his job was largely sedentary. *See* R. at 106-07, 135 (indicating that he was required in an 8 hour work day to walk for ½ hour, stand for ½ hour, sit for 7 hours, no stooping, crawling, or crouching, and frequently lifting 10 pounds or less).

    C.    <u>Medical Opinions</u>

Plaintiff asserts that the ALJ erred by not giving greater weight to the opinions of his treating physicians. A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record. *See* 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro,* 270 F.3d at 178. If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider:

  (1) the physician's length of treatment of the claimant,

  (2) the physician's frequency of examination,

  (3) the nature and extent of the treatment relationship,

  (4) the support of the physician's opinion afforded by the medical evidence of record,

---

[6] The ALJ inadvertently wrote frequently in his opinion. R. at 17.

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2).

While the ALJ's discussion with respect to the medical evidence contained in the record is sparse, the Court nonetheless finds that the ALJ's decision is supported by substantial evidence. While Plaintiff makes sweeping citations to the medical record, nowhere does he point to specific findings by any of his treating physicians suggesting limitations greater than those found by the RFC. Indeed, the Court agrees with the Commissioner that the overwhelming evidence in the record demonstrates improvement in his condition (particularly after his surgery in December 2007) and conservative treatment including the suggestion to lose weight and exercise. *See, e.g.*, R. at 200, 242, 248, 249, 349. After being discharged from surgery in stable condition, R. at 277-86, he received home health skilled nurse services and he was discharged form those services. R. at 364-66.

Finally, as mentioned above, Claimant was found disabled on reconsideration as of December, 2007. The ALJ rejected that opinion because subsequent treatment records reflected response to treatment and an increase in his activities of daily living since prior to that time. R. at 16. While the Court does not review internal agency -level proceedings, the Court must nevertheless determine if the ALJ's finding regarding Claimant's ability to work after December, 2007 is supported by substantial evidence. The Court finds that it is. Claimant underwent a tracheotomy and tonsillectomy in December, 2007 for obstructive sleep apnea. R. at 278, 295. On December 13, 2007, it was noted that Claimant's blood pressure was running

high but that he had lost six pounds. R. at 350. On December 14, 2007, he was reported as "doing well" and sleeping better. R. at 336. At a follow-up visit on January 3, 2008, his blood pressure was not normal but still reported as being "good" and "and likely as good as can be expected . . .". R. at 349. He was recommended to continue exercise and weight loss with a healthy diet. *Id.* A follow up was not recommended for three months. *Id.* Also, as mentioned above, Claimant received home health care services following surgery and was successfully discharged from services. R. at 364-66.

## V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.


Date: March 13, 2012                            _____/s/_____
                                                THOMAS M. DIGIROLAMO
                                                United States Magistrate Judge



Copies to:
Jonathan S. Beiser
One Central Plaza, Suite 1002
11300 Rockville Pike
Rockville, MD 20852


Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692